**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THOMAS N. MOORE,**

                           **Plaintiff,**

                         **v.**                                       **5:05-CV-5**
                                                                              **(FJS/GJD)**

**SYRACUSE CITY SCHOOL DISTRICT,**
**DR. STEPHEN C. JONES, RANDOLPH**
**WILLIAMS, DAVID CECILE, and**
**MARGARET WILSON,**

                           **Defendants.**
_____

**APPEARANCES**                                   **OF COUNSEL**

**THOMAS N. MOORE**
Syracuse, New York 13202
Plaintiff *pro se*

**CITY OF SYRACUSE CORPORATION**       **JAMES P. MCGINTY, ESQ.**
**COUNSEL**                                          **JOSEPH FRANCIS BERGH, ESQ.**
Room 301 City Hall                           **MARY ANNE DOHERTY, ESQ.**
233 East Washington Street              **ROBERT P. STAMEY, ESQ.**
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff's complaint[1] asserts causes of action for (1) Title VII disparate treatment and

---

[1] After this Court issued its June 8, 2005 Memorandum-Decision and Order, Plaintiff made two attempts to amend his complaint. *See* Dkt. Nos. 45 & 62, dated August 16, 2005, and
                                                                                                 (continued...)

racial and gender discrimination; (2) racial and gender discrimination pursuant to New York Executive Law §§290-301 ("Human Rights Law"); (3) Title VII hostile work environment; (4) racially motivated treatment and demotion under 42 U.S.C. § 1983; and (5) intentional infliction of emotional distress arising out of his employment and later dismissal as a daily substitute teacher.

In a Memorandum-Decision and Order dated June 8, 2005, this Court granted in part and denied in part Defendants' motion to dismiss for failure to state a claim. At present, the following claims remain: (1) Title VII claims for a) racial and sexual discrimination, b) hostile work environment, and c) retaliation[2] against Defendant Syracuse City School District ("SCSD"); (2) a § 1983 equal protection claim against Defendant SCSD based on the hiring of football coaches, *see* Memorandum-Decision and Order dated June 8, 2005, at 6; (3) a § 1983 equal protection claim against Defendant Williams,[3] Director of Personnel of Defendant SCSD,

---

[1](...continued)
December 19, 2005, respectively. However, Magistrate Judge DiBianco denied without prejudice both of Plaintiff's motions to amend. *See* Dkt. No. 69, Order dated February 24, 2006. Therefore, although Plaintiff, in his opposition papers, refers to his amended complaint, the Court will construe any references to an "amended complaint" as referring to the corresponding part of the original complaint (to the extent such reference is possible), which is the only complaint that Plaintiff has filed in this matter.

[2] In its June 8, 2005 Memorandum-Decision and Order, the Court only listed the discrimination and hostile work environment claims under Title VII and did not find a retaliation claim. However, the Court finds that, construed liberally, the *pro se* Plaintiff's complaint also alleges a retaliation claim under both § 1983 and Title VII.

[3] Despite Defendants' renewed contention that Defendants Williams and Cecile were not acting under the color of state law (or that Plaintiff failed to allege that they were), this Court has already rejected this argument and found that, for § 1983 claims based on the above-listed actions, Defendants Williams and Cecile acted under the authority of state law. *See* Memorandum-Decision and Order dated June 8, 2005, at 6-8. The Court finds that Defendants have presented nothing to change this decision.

based on the letter of dismissal dated May 6, 2003, *see id*. at 7; and against Defendant Cecile, the former principal of Shea Middle School,[4] based on his request to Defendant Williams that Plaintiff not return to the school, *see id.* at 8; and (4) a § 1983 retaliation claim against Defendants SCSD, Williams and Cecile. *See id*.[5]  On January 11, 2007, the remaining Defendants moved for summary judgment on the merits of these claims.[6]

## II. BACKGROUND

Plaintiff was employed as a daily substitute teacher, paid on a *per diem* basis without a contract or tenure, for Defendant SCSD. Plaintiff, in his complaint, alleges that, during the course of his employment, he had difficulty with Defendants' failing to enforce the school's dress code. He also alleges he was subject to hostile students and racially insensitive remarks of students, teachers, and Defendants Williams and Cecile.

Plaintiff alleges that in April 2003, during a disagreement with several teachers at Shea Middle School over his discipline of some students, one of the teachers made discriminatory comments about his race. Plaintiff claims that it was after this incident that Defendant Cecile,

---

[4] It appears that Defendant SCSD has closed Shea Middle School.

[5] To the extent that Plaintiff has asserted any claims against Defendants Williams and Cecile in their official capacity, the Court dismisses any such claims as redundant because Plaintiff has attempted to assert those claims against Defendant SCSD. *See Wallikas v. Harder*, 67 F. Supp. 2d 82, 83 (N.D.N.Y. 1999) (citations omitted).

[6] Defendants moved for summary judgment largely on the following grounds: (1) Defendants had a legitimate non-discriminatory reason to terminate Plaintiff's employment, which Plaintiff cannot show is mere pretext or unworthy of credence; (2) Plaintiff fails to allege a constitutional violation with respect to his § 1983 claims; (3) the individual Defendants are not state actors and did not act in concert with a state actor; and (4) Plaintiff cannot show a municipal policy or custom of discrimination.

Principal of Shea Middle School, made a request to Defendant Williams that Plaintiff not be allowed to return to the school, which led to Defendant Williams sending Plaintiff a letter of dismissal in May 2003.

### III.  DISCUSSION

**A.     Summary judgment standard**

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c)).  First the moving party must demonstrate the absence of a genuine issue of material fact; then, the opposing party must present evidence, beyond the pleadings, to satisfy every element of the claim and to show a genuine issue for trial. *See id*. (citations omitted).  The court must resolve all ambiguities and draw all permissible inferences in favor of the opposing party. *See id*. (citation omitted).  In employment discrimination cases, the Second Circuit "has . . . expressed the need for caution about granting summary judgment to an employer in a discrimination case," which turns on the employer's intent. *Id*. (citations omitted).  However, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Id*. (citation omitted).

**B.     Remaining claims**

### 1. Title VII claims against Defendant SCSD

#### a. Plaintiff's Title VII racial discrimination claim[7]

Title VII discrimination claims follow the *McDonnell Douglas* burden shifting test. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. [792,] 802, 93 S. Ct. 1817 [(1973)]). Initially, Plaintiff must meet a minimal burden to establish a *prima facie* case "by demonstrating membership in a protected class, qualification for the position, adverse employment action, and circumstances giving rise to an inference of discrimination." *Id.* (citation omitted). Since Defendants do not pursue the point, the Court assumes for the purposes of resolving this motion that Plaintiff has made a showing of a *prima facie* case of discrimination.

If the plaintiff establishes a *prima facie* case, the defendant must produce a legitimate, non-discriminatory reason for his termination. *See id.* Defendant Cecile states that he received three complaints about an incident that occurred on April 10, 2003, involving Plaintiff and that he requested Plaintiff not return to his school in the future based on these complaints and his investigation of the incident. *See* Affidavit of David Cecile dated January 18, 2007 ("Cecile Aff."), at ¶¶ 5-6 & Exhibit A. Defendant Williams received and investigated complaints from six principals requesting that Plaintiff not return to their schools. *See* Affidavit of Randolph Williams dated January 18, 2007 ("Williams Aff."), at ¶ 6 & Exhibit A. Defendants assert that Defendant Williams terminated Plaintiff's employment on the basis of these complaints and not because of his race or gender. *See id.* at ¶¶10-12. The Court finds that this evidence satisfies

---

[7] In his complaint, Plaintiff alleges gender discrimination im addition to racial discrimination; however, Plaintiff did not present evidence of gender discrimination and Defendants only addressed racial discrimination.

-5-

Defendants' obligation to articulate a legitimate non-discriminatory reason for their actions.

If the defendant articulates a legitimate non-discriminatory reason, the plaintiff must then demonstrate that the defendants' stated reason is a pretext for discrimination. *See Cruz*, 202 F.3d at 567 (citations omitted). Based on its review of Plaintiff's submissions, including his long and disorganized Memorandum of Law,[8] the Court has determined that Plaintiff is asserting that the following demonstrates pretext: (1) the scope of Defendant Cecile's investigation of the April 10, 2003 incident; (2) differential treatment of Plaintiff based on his enforcement of Defendant SCSD's dress code; (3) Plaintiff's lack of opportunity to respond to the principals' complaints;[9] and (4) vague references to racial comments by students and SCSD staff.[10] The Court will address each of Plaintiff's arguments in turn.[11]

---

[8] Plaintiff's Memorandum of Law largely consists of haphazardly arranged citations to cases and factual arguments not arranged in logical order. The Court also notes that Plaintiff did not paginate his Memorandum of Law. For ease of reference, the Court has paginated this document, starting with page one following the Table of Contents (and Authorities).

[9] Plaintiff also challenges the principals' requests that he not return to their schools on the following bases: (1) that some do not provide reasons; (2) that some were written after his termination; and (3) that some are undated. Plaintiff also generally argues that many of the assertions made by various SCSD personnel that support the principals' requests are lies. The Court finds that Plaintiff fails to produce any evidence that the requests were not, in fact, made. The ones written after his termination, by their own terms, refer to a request that precedes Plaintiff's termination. Although Plaintiff asserts that people are lying, Plaintiff provides no evidence to support these assertions. Their truthfulness would in any event be irrelevant absent a showing that Defendant Williams knew them to be false. Accordingly, the Court finds that none of these arguments support a finding of discrimination.

[10] Plaintiff also spends time discussing an incident where he was accused of and exonerated from a charge of the use of corporal punishment against a student. *See* Affidavit of Thomas N. Moore dated June 11, 2007 ("Moore Aff."), at ¶¶ 8-11. Although this incident appears to have led to a request that he not return to a school. *See* Williams Aff., Exhibit A at 5. Plaintiff has not presented anything to show that the principal's reaction was racially motivated.

[11] Plaintiff also provides details about and/or affidavits from other black SCSD

(continued...)

*(i) Defendant Cecile's investigation of the April 10, 2003 incident*

Defendant Cecile investigated an incident that occurred on April 10, 2003, at Shea Middle School involving Plaintiff's conduct. According to Defendant Cecile, he found that, on April 10, 2003, Plaintiff, who was substituting for Ms. Trendowski, sent five to seven students into the hallway in an unsupervised area. *See* Memorandum from D. Cecile to R. Williams dated April 23, 2003. Defendant Cecile further claims that Plaintiff then engaged in arguments with another teacher from a neighboring classroom in the hallway and then later with Ms. Trendowski upon her return to her classroom. *See id.*

Plaintiff contends that Defendant Cecile only spoke with white employees about the incident and not black employees. *See* Moore Aff. at ¶ 13. Plaintiff also asserts that the Vice-Principal refused to allow him to make an incident report about this incident and about racial remarks from Ms. Trendowski. *See id.*

In a memorandum to Defendant Williams,[12] Plaintiff explains that, during the April 10, 2003 incident, he sent several students into the hallway to be picked up by staff from the office, but Plaintiff contends that nobody came. *See* Memorandum from T. Moore to R. Williams dated June 25, 2003, Plaintiff's Exhibit A-31 at 4. Plaintiff contends that he could supervise these students while they were in the hallway. *See id.* Plaintiff asserts that the teacher from the neighboring classroom also allowed disruptive students from the other classroom to enter

---

[11](...continued)
employees who have accused Defendant SCSD of racism. However, Plaintiff provides no reasons why these allegations are at all relevant to his case. Accordingly, the Court finds that this evidence is irrelevant and does not support a finding of discrimination in Plaintiff's case.

[12] In his exhibits, Plaintiff submitted what appears to be a memorandum he wrote to Defendant Williams on June 25, 2003.

Plaintiff's classroom. *See id.* Plaintiff asserts that the neighboring teacher and others interfered with his discipline because they did not want anything to reflect poorly on Ms. Trendowski. Plaintiff also presents an alternate version of his argument with Ms. Trendowski. *See id.*[13]

Although Plaintiff asserts that Defendant Cecile selectively interviewed only white witnesses to the April 10, 2003 incident, Plaintiff does not explain how interviewing other witnesses, such as the hall monitor, would have changed Defendant Cecile's conclusions about the incident other than to establish that Plaintiff called a hall monitor to pick up the students. There does not appear to be a question as to where the students were standing, only as to whether Plaintiff could supervise them in that location.[14] The Court finds that, even if the Court accepts Plaintiff's version of the facts, there is insufficient evidence to show a discriminatory motive on the part of Defendant Cecile and the other SCSD employees.

### *(ii) Differential treatment*

Throughout his submissions, Plaintiff repeatedly refers to his enforcement of the school's dress code, particularly as it relates to boys' pants being worn at waist level. Plaintiff appears to have been a staunch enforcer of the policy and complains that Defendant SCSD refused to support his efforts by having other teachers enforce the policy and refused to discipline students

---

[13] Plaintiff also asserts that Defendant Cecile's investigation was tainted based on Plaintiff's enforcement of the school dress code, which is discussed below.

[14] Plaintiff's claim of an alleged statement by Ms. Trendowski that "'she had eight (8) years as a teacher and knew more as to what her black students'[sic] needed and that they didn't need some black man controlling her class![,]'" *see* Memorandum from T. Moore to R. Williams dated June 25, 2003, Plaintiff's Exhibit A-31 at 4, does not in any way support Plaintiff's against these Defendants.

who misbehaved towards him as a result of his enforcement. Plaintiff, however, does not offer any evidence that this disagreement is racial in nature; rather, it appears to be a disagreement about the interpretation and the strictness of enforcement of the policy. Although Plaintiff bases his disparate treatment claim on being held to a different standard than white colleagues regarding dress code enforcement, *see* Moore Aff. at ¶ 6, he has provided no evidence to show that any white substitute teachers who made similar attempts to enforce the dress code policy were treated differently. Accordingly, the Court finds that Plaintiff has failed to establish disparate treatment or to produce evidence in regard to the dress code that creates a genuine issue of material fact for trial.[15]

### *(iii) Opportunity to respond*

Plaintiff complains that Defendants did not give him an opportunity to respond to the principals' requests that he not return to their schools. Although this might be relevant to a due process claim, Plaintiff has not shown how this would be evidence of discrimination. Specifically, Plaintiff has not shown that white substitute teachers were provided with an opportunity to respond to similar requests by school principals. Accordingly, the Court finds that Plaintiff's contentions regarding this issue are not evidence of pretext.

---

[15] Furthermore, Plaintiff has not shown that Defendant SCSD's decision not to enforce the dress code as strictly as Plaintiff wanted is in any way indicative of racism. From the totality of Plaintiff's submissions, it appears that many, if not all, of the incidents that both parties cite in this action originated as a result of Plaintiff's enforcement of the dress code and subsequent disagreements between Plaintiff, students, and other SCSD employees. Plaintiff specifically appears to enforce the policy strictly with respect to the wearing of pants below the waist. Although Plaintiff's strict adherence to the policy is admirable, the Court finds that Defendants' discretion on how to enforce the policy is not a racial matter.

### *(iv) Racial comments*

Finally, throughout his papers, Plaintiff makes passing reference to several incidents where SCSD administrators, teachers, or students allegedly made racially insensitive comments. Plaintiff asserts that Ms. Trendowski made racial remarks to Plaintiff on April 10, 2003. *See* Moore Aff. at ¶ 13. As noted above, Plaintiff describes these remarks as a statement by Ms. Trendowski that "'she had eight (8) years as a teacher and knew more as to what her black students' needed and that they didn't need some black man controlling her class!'" *See* Plaintiff's Exhibit A-31 at 4; *see also* Plaintiff's Exhibit A-36 at ¶ 13 (giving Ms. Trendowski's quote as "'That I do not need any black man to teach, or tell me how to control my students [sic] dress or behavior.'").

Furthermore, Plaintiff alleges that he and Defendant Cecile discussed an incident where a white student wrote "MONKEY" on a test paper. *See* Plaintiff's Memorandum of Law at 7. Plaintiff asserts that Defendant Cecile did not want to follow-up on this comment and took no action on an Unsatisfactory Conduct Report that Plaintiff wrote. *See id*. Plaintiff claims that he and Defendant Cecile also had a conversation "regarding black fathers and their role in taking care of their children" that Plaintiff found offensive as a single black male parent. *See id*.[16]

Finally, Plaintiff asserts that he complained about Mrs. Patricia Floyd-Echols' allegedly racist remarks.[17] *See* Plaintiff's Exhibit A-36 at ¶ 17(4). Plaintiff's own characterization of the

---

[16] Plaintiff further asserts that "Mr. Cecile has made other statements towards Black staff, and students with racial overtones," as well as other more conclusory allegations of discrimination. *See* Plaintiff's Exhibit A-36 at ¶ 10 & *generally*.

[17] Patricia Floyd-Echols is the Principal of Dr. King Magnet School. She is one of the principals who requested that Plaintiff not return to her school. *See* Williams Aff. Exhibit A, at
(continued...)

evidence fails to show racial animus on the part of Mrs. Floyd-Echols and instead characterizes her use of that language to reference a comment of a student. *See* Plaintiff's Memorandum of Law at 20-21. Accordingly, Plaintiff has failed to show that this incident raises an issue of fact regarding Mrs. Floyd-Echols' motivation for requesting that Plaintiff not return to her school.

The Court finds that none of these statements raises a genuine issue of material fact about the motivation behind Defendant SCSD's decision to terminate Plaintiff's employment. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's Title VII employment discrimination claim.

### b. *Plaintiff's Title VII hostile work environment claim*

Although the parties do not directly address this claim, the Court will address it because the claim fairly appears in Plaintiff's complaint and opposition submission. "In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that 'the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the condition of the victim's employment."'" *Cruz*, 202 F.3d at 570 (quotations omitted). Since isolated instances of harassment are ordinarily insufficient, a plaintiff must show either an extraordinarily severe incident or "'sufficiently continuous and concerted'" incidents to alter the plaintiff's work conditions. *Id*. (quotation and other citations omitted).

Plaintiff asserts non-specific general allegations of continuous racial harassment;

---

[17](...continued)
2. Plaintiff alleges she refused to discipline a student for using the word "nigger."

-11-

however, Plaintiff has not produced evidence of such harassment, other than potentially his conflict with Defendant SCSD personnel regarding the dress code. As discussed above, the Court finds that Plaintiff has not shown that his assertions regarding the dress code are racial in nature.

Plaintiff also raises four specific incidents of harassment: Ms. Trendowski's comments, Mr. Cecile's comments, Mr. Cecile's response to the student writing "Monkey" on a test paper, and Plaintiff's ambiguously described incident with Mrs. Floyd-Echols.[18] Although the Second Circuit has noted that "'[p]erhaps no single act can more quickly "alter the conditions of employment and create an abusive working environment" than the use of an unambiguous racial epithet such as "nigger" by a supervisor in the presence of his subordinates[,]'" *Cruz*, 202 F.3d at 571 (quotations omitted), the Court finds that Plaintiff's "evidence" regarding Mrs. Floyd-Echols' alleged comment is insufficient to meet that threshold standard. Furthermore, the alleged comments made by students, Ms. Trendowski, and the Defendant SCSD's failure to respond, are not sufficiently severe, either in isolation or when viewed as a whole, to create a hostile work environment.

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's Title VII hostile work environment claim.

### c.  *Plaintiff's Title VII retaliation claim*

---

[18] As noted above, although somewhat unclear, Plaintiff appears to contend that Mrs. Floyd-Echols refused to enforce his punishment of a student for the use of that word "nigger."

To present a *prima facie* showing of retaliation under Title VII,

> "a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that[] he engaged in protected participation or opposition under Title VII [], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action."

*Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quotation and other citations omitted).

In his memorandum of law, Plaintiff asserts that his protected activities were "whistle-blowing" and informing Defendant SCSD's principals and board of education about the non-enforcement of the Defendant SCSD's dress code. *See* Plaintiff's Memorandum of Law at 4. Plaintiff claims his reports about the non-enforcement of the dress code led to the requests that he not return to several schools, his termination, and his not being hired as a paid football coach.[19] *See id.*[20]

Protected activity is "action taken to . . . oppose statutorily prohibited discrimination." *Cruz*, 202 F.3d at 566 (citations omitted). Plaintiff has not provided evidence of any such protected activity. The Court finds that Plaintiff's allegation of whistle-blowing with no context is meaningless. Furthermore, complaints about the enforcement of the dress code are not protected activity because they do not address statutorily protected activity. Accordingly, the

---

[19] Plaintiff contends that he complained about discriminatory remarks by the "Defense Head Coach" at Fowler High School; however, Plaintiff does not argue that these complaints led to any retaliatory action. *See* Plaintiff's Memorandum of Law at 22.

[20] Plaintiff also claims that he made both formal and informal complaints to Defendants Williams and Jones. *See* Plaintiff's Memorandum of Law at 18. However, Plaintiff provides no details regarding these complaints.

Court grants Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claim.

### 2. *Plaintiff's § 1983 claims*[21]

#### *a. Plaintiff's § 1983 claim against Defendant SCSD regarding football coach hiring*[22]

The Equal Protection Clause of the Fourteenth Amendment directs that "'all persons similarly situated should be treated alike.'" *Velazquez v. City of New York*, No. 99 Civ. 3594, 2000 WL 325683, *8 (S.D.N.Y. Mar. 28, 2000) (quotation and other citation omitted). A plaintiff may prove a selective treatment claim by showing "both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on '"impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."'" *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (quotation omitted). Conclusory allegations are insufficient to survive summary judgment unless "supported by facts that may prove invidious discriminatory intent or purpose." *Velazquez*, 2000 WL 325683, at *8 (citation omitted).

Plaintiff contends that the four high school coaches prevented him from completing an application. *See* Plaintiff's Memorandum of Law at 22. Plaintiff, apparently contradicting himself, also contends that he completed an application in the Summer of 2002 but that

---

[21] Although Defendants spend considerable time refuting alleged due process and conspiracy claims, no such claims appear in the complaint.

[22] This Court had previously limited Plaintiff's § 1983 equal protection claim against Defendant SCSD to Plaintiff's allegations regarding the hiring of football coaches.

Defendant SCSD must have lost or destroyed it.[23]  *See* Moore Aff. at ¶ 18.  Plaintiff also maintains that black applicants are held to a different standard than white applicants, *see* Plaintiff's Response to Statement of Facts are in Dispute, at ¶ 9, and that he suffered racial remarks from a "Defense Head Coach," *see* Plaintiff's Memorandum of Law at 22.  Despite his general statements, Plaintiff has come forward with no evidence to support his claim that he was treated differently than white applicants for coaching positions.  Accordingly, the Court grants Defendants' motion for summary judgment on this claim.

### *b. Plaintiff's § 1983 equal protection claims against Defendant Williams and Defendant Cecile*

As discussed above, Plaintiff failed to produce evidence of differential treatment or any intentional discrimination by Defendant Williams in his decision to terminate Plaintiff's employment.  Plaintiff also failed to produce evidence of discrimination by Defendant Cecile in his investigation of the April 10, 2003 incident and his decision to request that Plaintiff not return to his school.  Since § 1983 requires an even higher standard of intentional discrimination, the Court finds that Defendants Williams and Cecile are entitled to summary judgment with respect to Plaintiff's § 1983 equal protection claims.[24]

---

[23] Defendant Williams stated that Plaintiff never completed an application to become a paid football coach.  *See* Williams Aff. at ¶ 13.

[24] The substantive standards for analyzing a § 1983 equal protection claim related to employment and a Title VII claim are the same, with some exceptions.  *See Patterson v. County of Oneida*, 375 F.3d 206, 225-27 (2d Cir. 2004) (noting that the core substantive standards for a Title VII claim apply to an equal protection claim under § 1983 except for the following differences: (1) statutes of limitations; (2) municipal liability; (3) individual liability; and (4) § 1983 requires a showing of intentional discrimination whereas Title VII liability may be

(continued...)

### *c. Plaintiff's § 1983 retaliation claim*

In a First Amendment retaliation case involving a public employee, the court first determines whether the employee's speech addresses a matter of public concern and, if it does, the court balances the employee's First Amendment rights against the interests of the government. *See N.Y. State Law Officers Union v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) (citations omitted). Speech addresses a matter of public concern where it relates to "'any matter of political, social, or other concern to the community,'" considering "'the content, form, and context of a given statement as revealed by the whole record.'" *Id*. (quotations omitted). Furthermore, a court should consider "whether the speech 'was calculated to redress personal grievances or whether it had a broader public purpose . . . .'" *Id*. (quotation omitted).

As discussed above, Plaintiff cites his complaints regarding the non-enforcement of the school's dress code as his protected speech as well as "whistle-blowing."[25] The Court finds that, although school policy might be of public concern, Plaintiff's complaints about the enforcement of the school's dress code are of the nature of a personnel grievance between Plaintiff and Defendant SCSD employees and essentially have to do with their refusal to enforce Plaintiff's

---

[24](...continued)
premised upon negligence).

[25] In a memorandum to Defendant Williams, Plaintiff also lists the following topics he brought to Defendant Williams' attention that he contends led to his termination: (1) the dress code; (2) a pay increase for substitute teachers; (3) unlawful acts of administrators towards black teachers, substitute teachers, and football coaches; (4) students' non-compliance with the dress code; and (5) teachers' dress. *See* Plaintiff's Exhibit A-20 at 4. Plaintiff's allegations regarding the dress code are addressed above. Plaintiff has not offered any argument or evidence to support a retaliation claim based on speech regarding pay increases for substitute teachers or unlawful acts towards black employees; accordingly, the Court finds that Plaintiff has not asserted any basis for a retaliation claim on these topics.

interpretation of the dress code. Accordingly, the Court finds that Plaintiff has not shown any potential protected speech on which to base this claim and grants Defendants' motion for summary judgment on this claim.

## IV.  CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment for Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2009
　　　　Syracuse, New York

　　　　　　　　　　　　　　　　　　　　　Frederick J. Scullin, Jr.
　　　　　　　　　　　　　　　　　　　　　Senior United States District Court Judge